Do you please call the first case? 08-18-21 American Service Insurance Company v. Frontline Transportation Corporation Attorneys please, whoever is involved in this, please approach the podium. Just two. It's simple. I thought there'd be more attorneys. You're going to argue both sides? All the defendants? Jim Newman on behalf of the plaintiff of American Service Insurance Company. I'll be arguing American Service's side. And your honor, my name is John O'Malley. I represent China Ocean Shipping Company Americas, known as Costco, and Interpolitizing Trust. My understanding from looking at the signature pages that came in, acknowledging the oral argument, is that we will be the only two making the arguments today. I believe we have the only two briefs as well. Okay, you have 20 minutes. Write it up as you wish. Presume we know the facts. There was an accident. There were deaths, property damage, personal injury, etc. We know those. So put in the facts as it regards the issues. Anything else? Nothing? Let's proceed. Stick to your strong points first. If you have any questions, we will not hesitate. May it please the court, my name is Jim Newman. I'm the attorney for American Service Insurance Company, and I will resuscitate the very brief facts that are relevant here. There was an accident on October 1, 2003, involving a truck which was owned by Frontline. We know the facts, so stick to the issue. The American Service Insurance Company, four months later, filed an interpleader, a complaint for interpleader, with the Circuit Court of Cook County, Chancery Division. That's why we're here today, the interpleader that was filed. There are really two primary issues involved in this appeal from American Service's side. One is the propriety of an interpleader and whether or not an insurance company, such as American Service Insurance Company, has language in its policy, which indicates that when the policy proceeds have been paid, that the duty to defend is extinguished. And the other issue is dealing with the propriety of the motion for summary judgment entered against American Service Insurance Company and in favor of Costco and Interpol. I'm going to deal first with the interpleading argument. As this court is well aware, I don't need to give a long history of interpleader, but there's a very strong public policy favoring interpleader for a multitude of reasons. First and foremost, I think it preserves assets. It preserves assets for purposes of equitable distribution of funds. That's the reason why the courts favor interpleader. That's why insurance companies interplead their funds into the court. It also assists the judicial economy. The purpose, if you look back even to over 100 years ago, when you look at the Illinois Supreme Court cases and U.S. Supreme Court cases dealing with interpleaders, the whole purpose is to name everybody who could have a possible claim on the property and to allow the court to use its equitable powers to distribute it properly, bringing everyone in together. That way you don't have a rush to the courthouse. The first person that files suit gets all the money. In this case, we had a million-dollar policy of combined single limits, American Service Insurance Company. This automobile accident involved multiple deaths, multiple injuries, far exceeding the million-dollar policy. That is why American Service Insurance Company, a mere four months after the accident, filed the interpleader to give the money to the victims of this accident to the court to distribute accordingly. But also to avoid the duty to defend if there was one, to save money, right? Absolutely, Judge. Right. No offense. No, that is part of the public policy behind an interpleader. Because if you look at the case law, that's very clear. You want to preserve the funds. The party shouldn't have to expend funds if there's no argument about the million dollars. Well, we have Conway, Vespadil, and Douglas saying you can't do that. What's your best Illinois case for saying you can do it? Well, Justice, there are a couple of cases. And I'll get to these other two cases that's relied upon by Costco. I don't believe they say you can't do that. They say that they couldn't do it under those circumstances and are factually dissimilar. But the Zurich case is a case that we rely upon that we think is very strong. We cited a bunch of cases in our brief. But here's the issue with all of the cases. I mean, I can make the distinction on all the cases what the courts look at. And there are two things in every case decided in Illinois, cited by Costco, cited by us, and cases that were cited outside of Illinois. I think we had a few Seventh Circuit cases and a few district court cases. There are two things the courts look at, the language of the policy, because it's a contract action after all, and then they look at whether or not there was an unconditional surrender. And those are the two issues that all of these cases stem from. Well, Zurich or Raymark, as I recall, didn't look at that. They looked at whether or not the money had been paid as a result of payment of judgments and or settlements. In Raymark, there being an asbestos case, Zurich had defended the Raymark law, settled the cases for their policy limits, while defending Raymark. And once they were done, this being an asbestos case, then, of course, everybody in the pool, lots of other people, sued Raymark for the same type of injury. And at that point, that's when Zurich said, look, we represented Raymark, we defended Raymark, we settled Raymark for policy limits, why would we continue to represent Raymark when we met our policy limits? There's no possibility of us ever having to pay, since we paid our policy limits, after representing Raymark. And I suggest that's radically different than here, where there's one accident, a catastrophic accident to be sure, but in one day, and then saying, well, we don't want to represent these people, we're going to lose, there's no question we're going to lose freight lines at fault or cost of those at fault, here's our million dollars, you guys defend it. Well, we go back to, again, I'll bring you back to the two issues, the language and the policy, and that's the difference in this case. Our policy has a provision in it which reads, and this is on page one of the policy in the record, however, the company will not defend any suit after it has paid the applicable limits of the liability for the accident, which is the basis of a lawsuit. Well, then you look at Conway, Baskerville, and Douglas, they haven't paid. You put the money in the court. Well, those cases talk about unconditional surrender. That's part two of the test. And in this case, the circuit court found specifically that American Service made an unconditional surrender of the policy. That's part of the order. Would you concede that we'd be the first court in Illinois, to say under the language that you just spoke of that exists in your policy, insurers can't file an interpleader as long as they post their policy limits unconditionally, so we don't expect to get a dime back, good luck to you, and tell the insurers we should hold, that's okay if the insurers then have to defend themselves? I believe in Illinois, if you're dealing with interpleaders, that's the, yes, we look at the other cases that I'm asking this court to review, and again it goes back to a matter of public policy, and the payment of this million dollars to the court is a payment. In fact, I draw the court's attention to I think a very well-reasoned Seventh Circuit case, and I want to give a quote that I cite on page 32 of my brief, which really goes to the contract action as well. This is the Seventh Circuit. It says, further, a company might choose to buy an insurance policy that requires the insurer to defend even after the policy limits are met, or to prioritize legal fees so that they are paid before the claim expenses and damages. ATG did not choose to buy such a policy, but instead asked this court to write the requirement into the contract after the fact. That goes back to the language in the policy. In this case, our insurer purchased a policy from us that has that language in it, has a limitation language in it that says once we pay the proceeds of our policy, then we no longer have a duty to defend. And there is a case that this court decided. You just cited ATG. So ATG relies entirely on a case called Mahan from the Indiana Court of Appeals. Now currently in Indiana, insurance policies are allowed in the state that the claim expenses are included within the limits of liability. So if you spend a half a million dollars on attorney fees, if the insurer spends half a million dollars on attorney fees representing its insurer, then its policy limits are no longer a million dollars, as they would be, I suggest, in Illinois, but rather they're now half a million as all that's left. Assuming the policy, you write a million dollars liability policy, if the insurer spends half of its amount of the one million defending the insurer, at the end of the day if they lose and they lose on liability in Indiana, the insurer only has to pay half a million. That's not the law in Illinois, is it? Well, no, that's not in Illinois, but there are. I cited, I believe, three cases from Indiana federal court in which they interpret similar language under both Illinois and Indiana law and found that there was no distinction between the law. Well, in Struder, a district court judge, not a 7th Circuit judge, a district court judge in the Southern District of Indiana held that indeed what you said, that the way he read Illinois law, the result would not be the same. It would be the same as you said. However, they point out in Struder, the district court did, that in addition, its insurer here has continued to defend its insurers while awaiting this court's judgment, and that's when they're distinguishing business. You're not representing, right? You haven't defended Costco, going back to whether Interpol is even in this game, I don't know, but you haven't represented Costco, have you? We have not represented Costco, although we have accepted their tender after the court's decision, because Costco is not insured under our policy, but we have been defending our name insured, and we continue to defend our name insured. But not the parties here. But not the party here, because we'll get to that later. Not the parties that you're trying to use the interpleader. You're trying to avoid defense costs by finding an interpleader, and in Struder, the case you're relying on from the Southern District of Indiana, the district court there said, here, they're still representing the people in the interpleader. While they gave us the money in the court, said they have no intention, and no belief they'll ever get their time back, they're still representing them. They're still obeying the duty, accepting their duty to defend. And that's not true here, is it? No, Judge, that just isn't true. We are defending the name insured, and to my knowledge, American Service is defending Costco right now. So, we are defending both right now. But Costco is not an insured under our policy, so the whole idea of interpleader really becomes moot. If they're not an insured under our policy, I would get to that argument. Excuse me, counsel, if Costco, if you're saying Costco is or is not an insured under your policy. They are not an insured under our policy. Wait, you're saying you're defending them? We're defending them because the circuit court told us to be how you do things. You're saying once the court made it to order. Correct. Yes. If I may, you also argued public policy in Douglas. Yes, that's true. That's a fairly new case, 2000. Discuss public policy in this area. The public policy in Illinois is that insurers must defend when they have a duty to defend. And they can't just walk away. And I suggest to you, Mr. Newman, you're asking us to allow every insurer on earth to post their limits when their insurer gets sued and they know they're going to lose, which I think is fairly common, and then walk away from their insurers as long as they post their limits and say, well, we're going to lose this one. Here's our policy limits. Good luck, everybody. I'm not asking the court that. I'm asking the court to enforce the terms of an insurance policy. But with all due respect, Justice, if the insurance policy has that provision in there, the parties are free to contract. And you look at all of the cases that talk about this. And I quoted the Seventh Circuit case. It was also an Indiana case. Yeah, I'm not sure if the Illinois case was an Indiana case. But the Seventh Circuit also made a finding that the payment of the policy to the court is a payment of the claim expenses under the policy.  It's the same thing as if I were to write the check to Costco or to any of the other plaintiffs. Because once you make that unconditional surrender of those funds, the insurance company can no longer get that money back. That is what this policy says. And all of the cases that counsel relies upon from a distinction standpoint all have language in there. One of two facts, there was not an unconditional surrender, or the policy didn't have the policy language, or in the case that they relied upon, Conway v. Country Casualty. The language in that policy was limited to judgments or settlements. The payment of judgments or settlements. That's not the language in our policy.  It's a simple contract action. Public policy, the only way that you can rule against the American Service Insurance Company with respect to this language is to say that this language violates public policy. So who would disagree with Douglas? If we had the same language, you would have paid, right? No, Douglas, I believe Douglas had language in there about paying a judgment. And to the extent that it doesn't, then I would disagree with Douglas. And Bess Fogel also has a payment, rather than judgment. They didn't have to disagree with me, or they are, as are we. We don't have to follow the 2nd or 5th District. But since no part of this state has ever followed your argument, two courts have rejected it, two appellate courts. And Conway is very close, but as you say, correctly, refers to settlements and judgments. So that is good. Well, this court, the 1st District, back in 1993, a case that I cite, Country Mutual v. Anderson. If you look at that case, the language in that policy, and I'll read it to you, which this court found that an interpleader was appropriate and there was no longer a duty to defend. Not an interpleader, but there was no longer a duty to defend. There wasn't an interpleader, I believe, in that action. It was just a straight declaratory. But that language, which they relied upon, was, our payment of the liability insurance limits ends our duty to defend or settle. And that's very similar to the language that we have here. And the court found that they no longer have a duty. Let's go to a hypothetical then. Because this is actually a huge case. Not itself. You're only in for a million dollars plus all the, if you lose, lots and lots of money to defend the case. What would prevent you in this case, your client, from knowing, I mean, you're an intelligent people, you look at it, there's eight people dead, and you're going to be unhooked to all of them, to at least, to a front line if nobody else. And the first person who sues, let's say, is Joe O'Brien, rather than Mr. or Mrs. Bwens. You're not going to lose your limits. I think you could have come into court, just me, could you have run into court, American Service, and given Mr. O'Brien, here's a million dollars. We're going to lose our policy. Here's a million dollars. We'll defend it to Mr. Frontline. On the O'Brien case, we're giving a million dollars, though. And as soon as this is all clear, it's not a settlement, we're getting the hell out of here. And tell everybody else, Frontline, you're screwed. By the way, we're up to a million. That's why you have excess barriers. Of course, don't have a duty to defend. Good luck to you. We settled with Mr. One of the plaintiffs. We're out of here. I think you could do that on these cases. Well, we tried to do that, your honor. We tried. They refused. They refused to take the money. That's in the record. The American Service Insurance Company, after they filed the interpleader, Interpol came in and interjected and said, no, no, no, no, no. And there's a whole fight going on for eight months to a year about this. We offered the million-dollar policy to every individual who had a death in that case. I want to say maybe five deaths, maybe less. But we offered that money in writing to them. If you want the million dollars, let us know. They refused to take the million dollars. But, see, that is the reason why you filed an interpleader in the first place. Well, I think the insurance company, I think, again, from a public policy standpoint, I think my client's position is when you have a loss of this magnitude, you have to try. You could just as easily give the million dollars to the first person that comes along. But the problem is that I think public policy should favor doing an interpleader to say, let the court decide who gets what. Because in this case, there are so many injuries. People are lucky if you walk away with $150,000 to $200,000. But, again, the issue here is the duty to defend. If you trust the whole for the first time in Illinois that an interpleader action by an insurer will relieve their duty to defend, that's asking a lot. Well, with all due respect to the court, I don't think it's asking a lot. It's only asking the court to enforce a provision in the insurance policy, which two individuals at arm's length met. And that's what the Seventh Circuit says. I mean, obviously, that's not binding on this court. But I think the reasoning in that makes perfectly good sense. And there's Illinois court cases that suggest the same thing. If our insurer wanted to have a policy that would continue to defend him, even after the payment, then they could have purchased one. But they didn't. Our policy premium is based upon that fact. If we've got a million-dollar policy and a devastating injury like this, that's what we contracted for. I think we've plumbed the interpleader argument to a demise. Why don't you go on to the interpool argument? Well, there's two. We'll deal with Costco and Interpool. First, I want to make this distinction, which Interpool, Costco's attorney, has not been able to distinguish. And it's simply this. There are two entities with the name Interpool in their title. Interpool, Inc. and Interpool Titling Trust, Inc. They're two separate entities. They've made it into a question. They have nothing to do with one another. They're two legal separate entities. Interpool Titling Trust, or, excuse me, Interpool, Inc., is an additional insurer under ASI's policy. They were named in an endorsement. Interpool Titling Trust was not.  They're a stranger to ASI's policy. Interpool Titling Trust is the party before you. Interpool Titling, Inc. is the party before you today. Which one? Interpool, Inc.? Interpool, Inc. There are two. There's Interpool Titling Trust, Incorporated, and then there's just Interpool, Inc. Okay. The short title, I'll call it Interpool and Interpool Titling for purposes of argument. Interpool is an additional insurer under ASI's policy. Interpool Titling is not. They're a stranger to the policy. Interpool Titling is the defendant in the underlying case. They are the defendant cross-plaintiff in this case. They're not the same entity. And yet the underlying court ignored it. Even though the request to admit the complaint, there is no evidence before the court or this court that they're the same entity. In fact, it's just the opposite. You say additionally insured. You're admitting then that Interpool is an additional insurer. Interpool is an additional insurer under the policy, but they are not a defendant in any action. But Interpool Trust is listed as an additional insurer under Sirius. 1743 of the record. That's not American Service. Apparently, they were listed as an additional insurer under another policy, and it's Costco's argument that they're making before you now and on appeal that they want this court to reform the policy to somehow include Interpool Titling Trust, which, of course, this court cannot do. You cannot reform the policy in the Equality Court. They never asked to reform the policy, and there's no basis to reform the policy in the underlying court. So that's not even really an issue. But they do rely, and they bring sites to the record, of another insurance company, which has nothing to do with American Service Insurance Company. American Service has no relationship with that company at all. And it's not during the policy period either. The policy in this case would get to why they're not an insured under the policy. The policy, ASI policy, defines an insured. But in the definition of insured, it also limits the definition. And this is on page two of the policy. It says, and I'll quote from the policy, none of the following is an insured under the ASI policy. Any person or organization other than the name insured with respect to a trailer while used with any motor vehicle is owned or hired by such a person or organization and not covered by life insurance in the company. Costco, now there is a question, I will say this. InterPool in the underlying complaint, which is part of the record, one of the underlying complaints, the Brunez case, they allege that Costco owns the trailer. They also allege that InterPool Titling Trust owns the trailer. That issue was never resolved in the declaratory action, and I don't know which is which. Maybe he was putting in alternatives, maybe they both do. But when looking at insurance coverage, you compare the allegations of the complaint to the policy. They made a payment of $1,200 basically for vehicle number 44. What is that referred to? What is vehicle number 44? Judge, Justice, I don't know what vehicle 44 is because we never got to that point. We never got to that point in the deposition. I believe they identified it as a trailer that was owned by Costco. No, not Costco. It was never identified as a trailer. It was owned by Frontline. That's how they identified it in the deposition. So you're saying driving down the highway, the tractor is insured but not any trailer, no matter who belongs to it. That's correct. The trailer insures itself. We don't insure the trailer, we insure the truck. Okay. That's under— What is this $1,200? They have to have that insured. I'm sorry? Vehicle number 44 was insured for $1,200. What is vehicle— There were multiple trailers that were insured. The trailers that were insured under the ASI policy are identified by VIN number or other identification means. Costco's trailer was not. There is no evidence, admissible evidence, in this court, in the lower court of this court, that vehicle number 44 is a Costco vehicle. And to the extent that there would be a question, that would be a question of fact, which is why summary judgment should never have been entered in the first place. It certainly wasn't established that vehicle—I know they're making the argument, but we've passed affidavits and documentation showing that it's not. So that creates a question of fact. They've presented no evidence. There's no testimony at all in the record establishing vehicle 44 as a Costco vehicle. Now, the other issue that they brought, although I think they've abandoned it, but I'm going to address it just very quickly, is that the interchange agreement somehow requires American Service to defend Costco. They raised that in the court below, but it doesn't appear that they raised it in the court here. But to the extent that they do, the interchange agreement cannot because it's a contractual obligation, and our policy specifically excludes from coverage any obligation by contract. Well, our Supreme Court looked at that same agreement on this case, right? It said that while the front line is liable to identify Costco, they don't discuss the insurance ramifications of that. They held a Bowens that the Supreme Court did. Their front line is on the hook for Costco. Yeah, absolutely. We weren't a party to that case. We weren't a party to the appeal. But our policy, Costco had come back down to the circuit court and had made an argument, hey, we're entitled to identification under this agreement. And our position in the oral court was, no, you're not because it's contractual in nature. In fact, the very basis of their tender to us, which I raised in my brief, was this interchange agreement. It wasn't that they were an additional insurer. They never claimed to be an insurer. The record shows that their tender to us. Costco you're talking about. Costco, correct. Costco tendered this to American Service Insurance Company under the interchange agreement, under the guise of I have a contract with your insurer that requires him to insure me, therefore you have to insure me. Now, I will make another point to this since we're on this issue. Interpol Titling Trust, the other party in this case, never tendered their defense to American Service Insurance Company, contrary to what they argued. There is nothing in the record to indicate that Interpol Titling Trust tendered their defense. In support of that, they cite to the letter from Costco, saying we tendered our defense on this date. But that letter doesn't even mention Interpol. Now, as I indicated earlier, what did they tender under? What was their argument? They didn't. They didn't tender. They filed a petition to intervene into the action after summary judgment was already briefed. The court allowed them to intervene, and then they filed, same attorney, then they filed their motion together. And again, the whole time in prosecuting their case, they just kept referring to themselves as Interpol, Interpol, and we kept saying Interpol Titling Trust, which by the way, Interpol Titling Trust, another issue raised, isn't even the proper defendant in this, or not the party of interest, I should say, because that goes to the track leasing. Interpol Titling Trust was sued in the underlying action and sued in this action as assignee of track leasing. Now, we all know what that means. That means that track leasing is the party of interest. Track leasing would have to have the insurance under the policy. There's no case law that I'm aware of, there's no argument that could be made, that you can somehow assign coverage, which is basically what they're trying to do. Track leasing was the defendant in the underlying case, and they were sued, Interpol Titling Trust Inc. was sued as assignee of track leasing. The last issue which I'll touch about is the attorney's fees. They filed a petition for attorney's fees. And as this court is aware, you mentioned this case went up to the Supreme Court. That was a contract action. There was also this action, a declaratory action, and then you have all of the underlying bodily injury, personal injury cases. So you have three separate cases, types of cases, because there are a bunch of bodily injury cases. But you have this D.J., you've got a contract action against named insured, and then you've got the underlying cases. Same law firm is representing Costco in all of them. They filed a fee petition for over a million dollars in this matter. The underlying defense counsel in this that was defending Frontline, the other law firms, fees to that point were $88,000. That raised a bit of a red flag for American Service. That's less than 10% of the cost of this. And I think, and counsel can correct me, the underlying case really hasn't done anything. At that point, they've taken maybe four depositions. But they've basically been stayed pending this coverage issue. And it's still moving along rather slowly, although I think they've got it back up again. There have been multiple pre-trials on it. Point of the matter is, there was never a million dollar worth of work under anyone's imagination done in that case. So when they submit the fee petition, we asked for discovery. We wanted to, we got the fee petition. When did you ask for discovery? I'm sorry? When did you ask for discovery? Immediately upon the fee petition. The court denied our right to do discovery. We asked to take the depositions of the individuals involved in these entries with the time. The court denied it. We asked for an evidentiary hearing, which is absolutely prerequisite to returning fees when requested. The court denied it. We did not get an evidentiary hearing. And I guess the evidentiary hearing would have been short because we didn't have any evidence. We weren't permitted to do any discovery at all on the basis of this million dollar fee petition. We had attached the affidavit from Justice Horenheim, who sat on this bench years ago, as our expert witness. And he, as the affidavit, he said, I need to see these documents that they allegedly created to determine whether or not this was reasonably related to this case. Or not this case, excuse me, the underlying case. They were fused. So they had entries, again, million dollar entries. Some of the entries were for copying expenses and things like that, which were not permitted under the fee petition. All kinds of expenses in there. But we can't make heads or tails of their $5 bill for drafting a brief or a letter if we can't see the letter. And what they claimed was attorney-client privilege. But at that point, we had accepted their tender as well. So the attorney-client privilege would basically go out the window for all intents and purposes. If ASI was going to be defending this, we're on the same page to defend the underlying action. But they didn't allow us to do any of that. The circuit court didn't allow us to do any discovery whatsoever. And as a result of that, a judgment was entered against American Service Insurance Company for over a million dollars. And the other argument we make is it was premature in the first place to even enter it. If we're going to claim some type of attorney-client privilege or work product privilege, then we have a right, then what should have happened is the judge should have held off on entering any judgment for any fees until the underlying case was solved and all of those issues with privilege and work product go away. But instead, while the case is still pending, they get a judgment against American Service for over a million dollars. In a separate court proceeding, they get a judgment against Frontline for the same attorney's fees for about $1.6 million. So they have two judgments representing the same – the Frontline is a little bit broader because they had other things that they claimed that they did with Frontline. But it's the same fee petition. And again, when you compare it to the fees that were incurred by American Service Insurance Company in defending the defendant of $88,000, I think that warrants the ability for us to do discovery. And obviously, in order to have a hearing, which we are absolutely entitled to, we have to be able to have evidence for that hearing. And for that reason, I think at a bare minimum in this case, regardless of anything else, the judgment has to be reversed so we can go back and have an actual meaningful hearing, which means putting people up on the stage and saying, this two-page letter you built five hours for, that's how a contested hearing works. We were never afforded that opportunity. So for that reason, I'm asking this court to reverse the general court for those three reasons. To allow an interpleader, that Costco and Interpol Titling Trust are not insured under ASI's policy, which means they don't get a judgment, and which also means that the issue of the interpleader, I guess it doesn't become motion. I'm still confused by this. Vehicle number 44, a non-insured trailer. What are you referring to? I'm referring to the schedule of coverages premium was provided. You're saying here, it says, effective August 29th, Cepeda was driver number 25. And it also says Cepeda's tractor vehicle number 43 is covered. And then it says vehicle number 44, a non-owned trailer. And it was a non-owned trailer, which was identified, that was added. It was a non-owned trailer. Then is it ambiguous on who this is? To the extent that it is ambiguous, it's a question of fact. That's the point that we made. We don't have any rule. There is no evidence. Non-owned to me, and I'm not an expert in insurance, but non-owned to me would cover any non-owned trailer that this tractor is pulling. No, that's not the testimony. The testimony in this case was that it was a non-owned vehicle, which was identified. That is very common in the industry. If you know that you're going to be pulling a certain vehicle, you can name it as an additional insurer. As an example, a good example is that Interpol Inc. is named as an additional insurer in the policy because they advised us that they did some work for Interpol Inc. and asked for an additional insurer. That's the same thing with this type of endorsement. If they identify and say, we're going to pull this trailer, but we don't own it, then we insure that trailer. And we insured many trailers that had been identified with some specificity. But to jump to the conclusion that Vehicle 44 is somehow the Costco vehicle, you would have to have evidence on that. And to the extent they have no evidence, but to the extent they had evidence, we have evidence that it's not, which creates a question of fact, which is a dispute, which precludes summary judgment. That was the argument that we made below. This case, from a factional standpoint on this, has so many questions of fact. Summary judgment should never have been entered in favor of Costco. They just threw a bunch of facts out there, didn't prove any of them, and the court found, okay, there's going to be insurance under the policy. So as I was concluding, we asked the court to reverse on the issue of an integrator, for the reasons stated, and also to find that Costco and Interpol Titling Trust Inc. is not insured under the definition of our policy. And finally, to the extent that the court says that they are insured, to vacate that judgment that was entered, because ASI never had a meaningful opportunity to have a contested hearing. It was denied. And I've cited the case law that says that if a contested hearing is requested, it's mandated. The court is obligated to give it to us. It's not discretionary. Thank you. Thank you. Do you have any questions? No. Okay, thank you, counsel. Thank you. Good morning. May it please the court, again, my name is John O'Malley. I represent Appellees Costco and Interpol. I want to start with answering your question that you just asked. The policy says non-owned trailer. American Service received a substantial premium for adding non-owned trailers. Every time they added a driver, every time they added a tractor, they added a non-owned trailer. And they charged premiums for it. Now, what are we talking about here? Let's talk about Mr. Zepeda's day. Mr. Zepeda gets up in the morning, starts his tractor, and goes to a rail line over here on the near south side. He picks up a chassis and a container box. He moves it. Then he goes and he picks up another trailer and a chassis and a container box. He moves it. Then he goes and gets another one. How many moves a day do these drivers have? They can have several different moves on different trailers. These chassis are sitting on over at the rail yard, and if you head out the Eisenhower, you can see that huge rail yard with that huge container boxes. These come off these trains, these container boxes that are put on chassis or trailers, and they're moved time after time after time. Mr. Zepeda did not own this trailer. Mr. Zepeda moves trailers owned by what we call steamship companies like Costco or Haypack Lloyd or all sorts of other container box companies that you see when you drive down any of the expressways or you drive down, right down the Eisenhower and the Stevenson, you can see those huge train lines. Very important. The bottom line is non-owned trailer vehicle 44 is any trailer that Mr. Zepeda is hauling. That's what a non-owned trailer is. And I think that's really different than the container. Excuse me? The trailer is insured separately from the container itself? The container box is essentially the movable box that sits on top of the trailer, and they call it a chassis and a trailer under the nomenclature of the Illinois Commerce Commission and the Federal Commerce Commission. That's called a trailer. They're movable. They're put on trains. I was stopped by one last night as the container boxes went by, and I saw Costco and I saw Haypack Lloyd, and maybe you've been stopped by many of them, but that's how the railroad industry works these days. So it's very important. They have tractors that are owned by Frontline and owned by Zepeda, and they move these container box here in the local area. What does this do to insurance? Their argument is they don't insure trailers. Excuse me? His argument was that they don't insure trailers. That's, in this case, demonstrably unsure because we know they receive $1,200 premium, number one. Number two, talking about Mr. Zepeda, under the policy language upon which they are relying, that's their interpretation. Mr. Zepeda is not covered under the American Service Policy. Furthermore, there is an admission in the record that this trailer is covered for additional insurance. No, that language doesn't exist. This trailer would be covered for additional insurance. It's not named anywhere in the policy. This trailer is a non-owned trailer, and their interpretation of the policy is that it is insured for additional insurers who are listed on the policy. So, in other words, a trailer would be covered, a non-owned trailer. But that contention and that admission is certainly in the record. I don't even have to say it. Give me a moment. Now, the important thing is- I'm sorry to interrupt you, but was this trailer, it was involved in an accident, owned by Costco? This trailer was leased by Costco and owned by Interpol Titling Trust. And I want to clear up some confusion from counsel's statement. Interpol Titling Trust, as an assignee of TRAC, is the underlying named defendant. So, any contention- Anthanascony. Excuse me? Anthanascony. That's because of a pre- this has nothing to do with a post-accident assignment. It has to do with the assignment of the ownership of the chassis prior to the accident. But how it gets here is very important. If Interpol Title is in here, they're in here only as the assignee of TRAC Leasing. Do you agree with that? They are a defendant in the underlying case. That's why they're in this litigation. They are a defendant in the underlying case as Interpol Titling Trust as an assignee. That's the way the plaintiff sued the defendant. And, of course, the duty to defend is determined by reviewing the four corners of the policy. So where does Interpol Title come in in this policy? Interpol Titling comes in at least two places. The first place is, number one, is in the definition of who is an insured. And I think it's very important, and I have it right here. The language that we haven't talked about very much, or at least ASI doesn't want to talk about, is subsection D. And it says who is an insured includes any other person or organization, but only with respect to his or its liability because of acts or omissions of an insured under A through C above. A through C above is flat line, and I believe B is a PETA. So, in other words, Interpol Titling Trust in the underlying complaint, which is the determinative factor for the duty to defend, is listed as a defendant due to the acts or omissions of Mr. Zepeda and Mr. Frontline. I'm sorry, Frontline. But let's suppose that the problem with this, and one of the allegations is correct, is that the trailer itself is shot. It has bad brakes. It was a disaster when it happened. That's not the fault of Zepeda or Frontline, other than Zepeda should have taken a bad trailer, I guess. Well, that's a very good point you just made. Actually, it is Zepeda's fault. And, actually, he has been convicted for failing to check the alleged deficiencies in the brakes. He was convicted in a criminal proceeding in McHenry County of negligent homicide, I believe. But, in fact, one of the claims against him was that Zepeda, who one would consider the last line of defense, has to go around pursuant to the ICC and federal regulations and check it. He is supposed to be checking it. But, in any event, the language used was that the trailer was so bad he went to prison for it, or got convicted of a felony for it. I would not say that the trailer was so bad. That was one of the contentions that was made. In fact, I believe that the basis, as you just said, of his negligent homicide conviction was that he failed to check the trailer. What else could it have been other than the condition of the trailer? I believe the testimony from the criminal case is fairly clear that, in fact, what happened was Mr. Zepeda failed to engage the brakes in a timely fashion at all. In fact, his criminal defense was that the bus swerved in front of me and made it impossible for him to have stopped in a timely fashion. So, in other words, the focus there is on the fact that there is simply no causation. You could have thrown an anchor off the back of this truck when Mr. Zepeda put the brakes on, and it could not have stopped. That was the crux of Mr. Zepeda. It really gets down to a question of there's disputes in the underlying case, which is obviously not something we are adjudicating here. It is pending before Judge Maddox. Let's move on to the second question. So what's your other theory other than who is insured, which is covered in the brief, by an argument? What's your next theory? How else is it covered? What's your other theory for Interpol title? The other position is set forth in that Interpol is specifically listed as an additional insured. That's Interpol Inc., is it not? Well, that's interesting. It's in English, though, so while it might be interesting, it says Interpol Inc. or Interpol title, or just plain Interpol, and it says Interpol Inc., does it not? The additional insured endorsement says Interpol Inc., and there was a question earlier that was raised, who is serious? The document that we had with regard to serious was the previous policy, and it was taken directly out of ASI's underwriting file. The broker took the old policy and said, guys, we have a lot of additional insureds here at American Service. Please take care of them. And did Interpol do so? I'm sorry, did ASI do so? They admitted that they did, and I think there was an attack in one of the briefs, and I have the actual counterclaim, and I want to read, the allegation in the counterclaim, Interpol as assignee of track leasing Inc. is a defendant in the underlying action. That's page 1027, paragraph 2. Answer, American Service verified answer, counter defendant ASI admits that Interpol as assignee of track leasing is a defendant in the underlying action, but denies remaining allegations of paragraph 2 as alleged. That is the admission. Next, we go to paragraph 9 of the counterclaim. The American Service policy contains an additional insured endorsement naming Interpol as an insured. Paragraph 9, that's on page 1030. Excuse me, counsel, isn't the question naming Interpol, we still don't determine what it is, Interpol Inc., Interpol Titling Trust. I mean, isn't that a question that needs to be resolved? Well, I believe that they admitted it, because the allegations of the counterclaim identify Interpol as Interpol Titling Trust as assignee of track lease Inc. We allege that Interpol contains, the American Service policy contains an additional insured endorsement naming Interpol as defined in the counterclaim as an insured, a verified answer. Counter defendant ASI admits that Interpol was an additional named insured as to the vehicle listed on the declarations pages only. Admits that Interpol. Admits that Interpol as defined in the counterclaim. And I think that's an interesting, as I was reading through American Service's brief, they seem to be saying, well, that this answer was, they were answering something that was not alleged, and we're not answering what was in fact alleged. Because we didn't allege anything about Interpol Inc. So the contention that this admission has to do with some other pleading that was not made, is a very, very curious interpretation of this admission. If your argument is that admission was seen to be, and you like an admission, whose job is it to clarify that? I would suggest it's your job to clarify it. If you're unhappy with the idea of saying, yeah, well, we do Interpol, or actually, you should have said Interpol Inc. is a named additional insured. If you want to say, well, they're fudging it, it should have an Interpol title and trust. Well, that's your job. When they made that admission, it's your job to say, well, is it Interpol Talent Trust or is it Interpol? And, of course, you didn't want that. That's the reason you didn't ask for that. You don't like the answer any more than they like the answer. Markedly less than. Actually, at the time, what was going on is they had a different interpretation of their policy. They changed their interpretation over time. At the time they answered and made the admission and we had the summary judgment, Interpol was an insured under their policy, but only for the vehicle listed in the declarations. And what's Costco's theory of recovery against ASI? Did they file under the idea that there were two needs? Did they file under the idea there were additional insurance? What was their theory? Costco's theory is based upon paragraph D, any other personal organization, but only with respect to his or its liability because of the actual admissions of the insured. That was the argument that we made before Judge McGann, Judge Henry, and Judge Riley. Now, what's interesting is I don't think there's ever been a dispute, and I think if we look at the reply brief and the opening brief, American Service Insurance Company doesn't mention that paragraph. Instead, they go to what they call a qualification. They call it an exclusion. They call it a limitation. And that's the paragraphs of one and two below. And I think what's very interesting, if we are talking about a question of ambiguity, in the reply brief and in all arguments today, Defense Counsel mentioned the wrong exclusion. He referred to paragraph two, a trailer used with any motor vehicle owned or hired by such person. That paragraph doesn't apply. It doesn't apply at all. Costco and Interpol did own the motor vehicle. So it's very important. We're talking about a question of ambiguity here. Here we have a very ambiguous statement, and they're relying on a policy provision that doesn't even apply. If we go up and take a look at paragraph one, a motor vehicle while used with any trailer owned or hired by such person, where it's covered by like insurance under the policy. This trailer is covered by like insurance under the policy. It is covered under this policy. They received a $1,200 premium for adding this non-owned trailer. What's the nature of the record on that, other than just common sense on both sides? These are in common sense, but it has to be more than common sense. The argument apparently is that, at least in the briefs, is that since the pit is 43 and number 44 would be the trailer that would go with the driver number 43, or rather with his, I'm sorry, he's number 23, with the front line's tractor being vehicle 43. That does make a lot of sense. Is that all the evidence in the record? It's common sense that if you look at all their, that's all it doesn't say in the briefs, that every time you look at the added driver and added tractor, the next vehicle would say an unknown trailer. Is that the argument? Is that what the record reflects? In fact, the record does reflect that every time that they added a driver, they added a non-owned trailer, number one. Number two, what's interesting. It's not discussed in the briefs, by the way. It's just that, well, everybody knows it. They're exact in the white brief is, who knows where number 44 came from? And the blue brief is that. Well, I believe the record does show, and we did cite the specific endorsements that added all these drivers, and they're certainly in the record. But what's interesting is we have an insurance company lawyer here today coming before this court saying we don't know what vehicle 44 is. That's an amazing. That's in his brief. That's an amazing. It's in the white brief. What's the blue brief say? Oh, it's this one. Okay. Well, Your Honor, of course, taking into account that this is American Services insurance policy, to have them come before this court and say today in the appellate court, we don't know what we accepted $1,200 worth of premium for is an amazing admission of ambiguity. To come before this court today and say there's nothing in the record that shows what vehicle 44 is, this is the insurance company that charged and received a premium for that. And I thought that was an amazing admission today. And I think it is. It's in their white brief. It's not an admission. They're saying, oh, I don't know what it is. The argument is, sure they do. They're in the business of selling this stuff. Every time they add a driver or a tractor, they add $1,200 for a non-owned trailer. Every time. And again, that's not in the brief. I believe you. Otherwise you wouldn't have said that. Because I could look that up and call you a liar later. So I believe you. That's not in the brief. And that's a problem we have, frankly. I'm not going to complain much. But these are complicated cases. And we come in and say, I have these two R trailers. Well, that's not helpful. It's not helpful to say in the blue brief, that is to this trailer. How about saying, well, if you look at the record, we have the records. The last 500 drivers they added, they added 500 unknown trailers. That would be wonderful. Is that in the record? Yes, Your Honor. The fact that they have added different vehicles and they added a non-owned trailer and they have lists of non-owned trailers with the premium that's on the depilations page, it's in several different places. There's a list of all non-owned trailers? As of certain dates. The way American Service does their policy is baffling to me. They keep it on a computer and every time they make a change, they print out stacks and stacks and stacks of documents. But they're identified just as non-owned trailers. So the reason you say that this guy goes to railroad yards and he picks up five trailers in a given day, he's fortunate. And so you run somewhere else. He has no idea. They have no idea what the VIN number is or whatever number you have on a trailer. He has no idea. He's not going to call every time he picks up a trailer and say, all right, the number on this thing is this. Make sure I'm covered. He writes down, the insurance company covers the data, recurring, pulling up non-owned trailers, meaning not owned by Frontline, not owned by Zepeda. Is that the theory? That is not only the theory. That is the facts. That's precisely what happens. And, again, it's on the briefs. So it makes perfect sense. Your Honor, I can only apologize about that. I can imagine in my mind. There's a lot of question cases. And they're terrible. The debriefing, I'm just not going to respond to it. There are millions of ballots. People get slaughtered by this thing. And it's the nature of the business. It just is. I'm not blaming the front companies. The drivers are wonderful. But the briefs, they don't explain anything. Like, wow, you know how this works in the icy air. Yes, you know I know. I know I can imagine in my mind's eye, again, that the declarations page does contain this list of the drivers and contains non-owned vehicles. Then we have the endorsement. And I guess somewhat in our defense, what we are dealing with here is an insurance company who doesn't know what type of policy that they wrote, did not put any explanation in the underlying record with regard to what policy they wrote, and therefore this policy is pregnant with ambiguity. I have an understanding, because I can see the policy and I know the policy and I know how these trackers work, how these move. This is how it moves. And I did want to point that out, and I'm happy I'm here today so I can clarify that. But again, this is a standard course of conduct for a trucker, and it makes sense. And when you charge a premium for an insurance company, I don't know that an insurance company should come before the appellate court and say they don't know what they received the premium for. But some of these things routinely crash. And again, I'm not tapping anybody. That's the way life works. There are no cases mentioning this. I mean, I've written cases. I was reversed a year ago on an insurance case involving trucks. And nobody, I haven't come across any cases, having read dozens of them, saying here's what this means. A non-owned trailer means it's not owned by the tractor owner, not owned by the driver. It's because of the piggyback system or whatever it is. Which is a wonderful bit of news. We have lots of these cases. I've never heard that before. I believe you. There are other issues, and it's certainly been before the Illinois Supreme Court. And I think that there's an entire other part of the case that's below, which has to do with the intermodal interchange agreements that are between the parties and, quite frankly, trying to drill down and focus. But this is very standard in the trucking industry. Your Honor, I just want to make a few more comments very, very briefly if I can. First of all, we've talked about the abstract and title case on the interpleater issue. I want to make it very clear that that is an errors and omissions policy. That is not an auto policy. It's not a commercial general liability policy. It is an E&O policy. Now, what that means is the defense costs are included within and operate to reduce the policy limits. In fact, you will see that the biggest recoverer, if that is a word I may borrow today, in that case was the name in short for his defense costs. He recovered. I've never seen one in 14 years. Is it not done in Illinois? It is done every day with regard to professional liability policies, our legal malpractice policy and E&O policy. You will never see a CGL, commercial general liability, or an auto policy in the state of Illinois where defense costs are included within limits. That is a violation of the Illinois Department of Insurance regulations and checklists. The Illinois Department of Insurance has concluded that including defense costs and reducing those limits is against public policy. And that makes perfect sense why we don't see them, except if you say an attorney's case is deductible. And not even a doctor's case is deductible. You're right, perhaps we do see them in an attorney's case. And that's not in the brief. And again, you're allowed to argue because it makes sense. That's not in the brief. So when they came in with this in the white brief and said, here's how this is, and I said, you can see my asking counsel, and the opening was, well, that's Indiana. It's Indiana, so I deal with it. And from there, so I deal with the same type of thing, that they include insurance costs, defense costs, in terms of liability, even at an auto case. And the answer is, well, Illinois doesn't do that. Illinois doesn't do that. We did point out in the brief that it was, and I don't mean to defend the brief, but we did point out that that was a burning limits, a defense costs within limits policy with regard to that Seventh Circuit case which concerned Illinois law. And we certainly have talked about quite a bit the other language in that regard. I want to briefly talk about the tender issue that we've talked about. ASI has brought it up several times in this court and the court below. The Illinois Supreme Court has held in Cincinnati v. West American Insurance Company, which is cited in our brief, that Illinois is not a tender state. American service's duty to defend is triggered upon the receipt of actual notice of a lawsuit against one of its insured from any source. The only time the tender comes into effect is what I would call anti-tender, the targeted tender doctrine, which I know we've talked about in other cases and is an issue here. There have been targeted tenders from Costco to ASI. But American service had actual notice of a suit, and therefore the question of tender is absolutely not an issue. Well, it didn't go in, so now they do have notice, and clearly they have notice of, first they had notice of claim within a couple of days of that one, and then they had notice of suit. And if you look at Cincinnati, the Supreme Court in Cincinnati could understand the difference, but there is, and I think they've figured it out since then. So now they have notice of claim within days, notice of suit within four months. Now they go file, or they file an interpreter action rather than a deck action. Correct. Is it your theory that had they filed a deck action, they should have filed it against the whole world? How would they know in this case to file against Interpool's title, give them notice, since Interpool's title by name is not mentioned in any of these documents? There's several different, first of all, they certainly did name everyone under the sun, which I think is a question that came up. The list of the American service versus every plaintiff and virtually every defendant in the underlying lawsuits. So the list on the caption is extraordinarily long, number one. Number two. But one of those is not Interpool's title, correct? One of the defendants, at the time it was, no. Track leasing, right, perhaps. It wasn't track leasing either. Later on, Interpool title and trust as the assignee. And then briefly I want to talk about the fee petition. There were comments made repeatedly about the bills, but of course the bills are not before you because American service has forfeited the issue. It's not part of the record on appeal. They have made no record before this court that would give this court any possible basis to review the invoices, and I think that's very telling. Did they have them? Absolutely they had them. At what point did they have them? They had them as of December of 2000 or January of 2000. And when did the court rule on the million dollars to be referred? May of 2000. So they got them seven months after the judge ruled that they owed you a million dollars. I'm sorry. When you said that they got the billing, the bills and invoices in December of 2000, and the trial period ruled in May of 2000. Did they rule in May of 2001 or something? I misspoke. I had my timeline. I was digging for it. People make mistakes in their argument, so remember that when you're applying for counsel. He said something wrong. It happens all the time. I have my timeline in front of me. Petition for fees was filed December 18, 2007. The grant of the motion for summary judgment was in January of 2007. In March of 2007, Costco and Interpol filed a motion for additional relief under Rule 701C. I'm sorry, the Code of Civil Procedure. Attached to that was an affidavit listing the fees. Did it break down bills and invoices? It did not. Only a million dollars. Okay. It did not. It was an affidavit, at which point in March of 2007, no effort was made by ASI in any way, shape, or form to conduct any discovery with regard to that affidavit or the bills. For how many months? The next time, the first time that they did discovery was March 24 of 2008. So about a year later now they're asking, And by the way, a year ago we were put on notice that they're going to be asking for lots of money. Yes. And now we want to be told, break it down. Is that correct? They sat on their request for a year. They issued a deposition notice, and I want to talk about that deposition notice very briefly. We are dealing here with the breach of the duty to defend. That's our position. I know. But going back, the question I ask is really pretty simple. When did they get the bills and invoices compared to when the trial court ruled to give you the million dollars? The petition for fees was filed on December 18, 2007. The hearing on the fee petition and the final judgment was May 29, 2008. Did they have the bills and invoices at that hearing? Absolutely. As did Judge Riley. And I think the transcript. No question. I think if you read the transcript, it's hard to imagine, because I was talking about the bills that were on the desk in front of them, and I kept referring to them as three or four inches deep. And that's interesting.  Furthermore, this was a 2003 chance reaction, and several different judges supervised it, and there was no effort made, as I pointed out, until March of 2008 to conduct any discovery on these issues. So I think the standard of review here, as I know we mentioned in the briefs, is whether it's an abuse of discretion. And under all the circumstances, particularly in light of the force that you're here, because the bills are not before the court, because they're not part of the record on appeal, because American Service did not provide them. And, again, they're voluminous. But I did briefly want to address that issue. I appreciate the extra time that you provided to me today. Do you have any further questions that I can answer? In the record, of course, there's this additional insured endorsement, and that was under Sirius policy. Yes. How do you relate Sirius to ASI? Is it in the record? Any proof? Absolutely. It was in the record. It was part of our motion, and certainly discussed during the briefs. Sirius was an insurance company that insured Frontline in the previous year. Frontline went to its broker and said, I need a new policy. Get me a new quote. Its insurance broker went to ASI, American Service's agent, and said, we need insurance. And the agent said, okay, well, send us a copy of the application. And, by the way, are there any additional insurance? The broker said, yes, there are. And here they are. And how did the broker do that? The easiest way for the broker to do that was to send the previous year's policy to American Service's agent. Rather than make his own list, rather than have his secretary type it out, he put it on the photocopy machine and sent it to American Service. So, when you're talking about the Sirius document that is in the record, it's part of American Service's underwriting file. It's one of its business records. It's part of the application. So, in other words, when Frontline asked for these entities to be insured in its application, it asked by attaching a copy of its previous policy. That's how it turned up in ASI's, excuse me. It's in there, but ASI never acknowledges specifically Interpol Trust. Well, that's one of the many points that we made below, was they were asked by having a copy of the previous year's insurance policy. They had a copy of the Sirius endorsement as a list. And they had any number of additional endorsements as well. And I think, as part of the record, there is a list of additional insurance upon inception. The list of additional insurance were taken off the Sirius policy. That's how it was done. So, in other words, the points that we're making here is that the request for an additional insured endorsement was in American Service's underwriting file. And I think what American Service did was they only took the first name. But, again, going back, I do believe that if we look at definition D, it doesn't matter. Both Costco and Interpol are insured under the policy. So can you cite a- Right, right. I understand there is a gist of your argument, a paragraph deep. But can you cite a case of the idea that there were an insured requested coverage of a bunch of people, and only one of them in this case, Interpol Inc., was granted that they're still covered by the insurance? It would seem to me that you're suing against a broker who failed to cover your client, not against American Service. Well, the problem with American Service is the way they operate their policies. What they do is when you make a change and you make a request, they have it on a computer and they hit a button. So you never really get to see the whole policy, and you have to dig for it. But to answer your question, I believe that certainly one of the fallback positions is the language is ambiguous. There is a request made as part of an application, and then you only have one name. And therefore, the basic principles of ambiguity here- But Interpol title is not a little outfit. You know, when I look at my insurance, I look at my insurance, make sure mine is name centered and my wife's name is on there. I don't think that's too much of a huge outfit. I've seen it. It's a closet problem. Interpol title and trust, look at their insurance policy. Interpol and Costco never saw this insurance policy until- How much is that? That is- They're paying $14,000, whatever it is. They're paying money for it. Oh, actually, they're not paying money for it, right? They're depending on Frontline. That's precisely right. And Frontline is not a substantial company. It's not a huge company. It was relying on American Service, and it was relying on- Frontline did what it needed to do, and it did it as best it could. It provided the previous policy. The previous policy had all these details. American Service chose not to follow the application for whatever reason, and the reason, I believe, that it is- what we're dealing with here is a very ambiguous policy. And, Councilman, there is a lot of ambiguity here. You're saying Costco is a small company and maybe not as in tune to all the details.  Therefore, some agenda shouldn't be granted. Just to clarify, you said Costco. I think you were- I'm sorry. I'm sorry, Frontline. If American Service was able to point to something in the record that other than its own arguments, perhaps there would have been. I certainly would have addressed whatever evidence they would have come forward with below. They did not. They did not come forward. So I think we're in a scenario here where the basic rule of an ambiguous policy is that it needs to be construed against the policy drafter here at American Service. For example, they've made the argument today that they don't know what Vehicle 44 is. There is not one shred of evidence below that they provided to the court that is admissible that shows what Vehicle 44 was. So there is no question of fact because there has to be an actual offer of proof. There has to be some sort of evidence that was as part of the record. And again, I think we were dealing with cross motions. And again, if I were an insurance company and I get additionally insured endorsement from Sirius and it lists Mafia Incorporated, Oh My Elka Home, as in not them, it seems to be what they did. They accepted some of these additional endorsements and not others. I believe what they did is when they inputted it, they only took the first company because there is no distinction between Interpol, Inc. or any of the other different companies at all. And again, the Interpol issue I think is an important one, but I certainly know that when Judge Henry was growing me about these issues, that what he focused on extensively was number one, making the record, showing where that Sirius endorsement came from, but number two, focusing on Paragraph D, which insures both Costco and it insures Interpol. Let's see, this would be a lot easier. Interpol title? No. It provides coverage Interpol title, right? It absolutely does. Let me ask you one other question. In this additional insurance, additional insured endorsement, China Shipping Container Line is mentioned. Is that Costco? At one point in this litigation, I kind of wished it was. It is not. China Shipping Company is a different, what we call, steam ship company, and we did investigate that, and it is not. But again, as a lawyer, I absolutely had to investigate that. I was not familiar until I looked at it. I'm not making it funny. It's just the whole area of law is a disaster in this area. It's unbelievable. Could you sum up in three or four sentences why Interpol Trust is insured? Yes, I can, Your Honor. It's based upon the insurance policy. The ASI policy covers any other person or organization where its liability arises out of the named insured front line or one of its drivers. The language of the exclusionary language upon which American service relies covers a trailer where it's covered by like insurance under the policy. And therefore, both Costco and Interpol qualify as insured under the policy. In addition, Interpol, based upon what I have contended, is three sentences. Okay. Okay. Any questions? No. Questions? Thank you, counsel. Thank you very much. Very good. Okay, counsel, briefly, just address his main argument. I will address only the points that he raised, and I think I've got maybe six points, and I'll do it very quickly. First, with respect to Vehicle 44. Vehicle 44, and I think Justice Quinn had asked the question, Vehicle 44 is identified in the policy because a new driver was added. And if you look at the evidence, counsel says there's no evidence, but there is evidence, and it's Bob McKenna's affidavit. Bob McKenna's affidavit, and I'll read you it, and this is directly from his brief. But didn't the court reject it? Well, it did, and I'm going to address that. You can't address it. Okay. Right. This is the fact that's in the affidavit. I did address this in my brief, but what Bob McKenna said was that it was an additional trailer for additional named insurers, as Justice Quinn pointed out. Every time that there was somebody added, a driver added, we have additional named insurers, such as Interpol, and I pointed this out in my opening brief. Those are all by endorsement. So what ASI would do is they would insure the driver, and then you would say, I'm pulling for Costco or China Shipping or Interpol, and they would be added as an additional insurer. And then a trailer would be identified. That's why when I say we don't know what Vehicle 44 is, they're all identified in there. So if the driver goes out and he finds a new company that he's going to have to put on his rig, does he stop, call you, call the ASI and say put this endorsement, and they all wait until the endorsement comes down? That is absolutely correct. That's exactly how the insurance works. But it's not like the driver's driving down the street trying to pick something up. They have clients. We insurer, the insurance company, has to know what they're doing, because there may be some clients, as you pointed out yourself, that we don't want to insure, whether they're pulling toxic waste, whether they're importing a particular company, maybe we have a conflict, but who knows? We have a right to know what they're doing. If we were to pull the record, if we were to look, as they say, in the blue brief where it says every time they add a tractor and a driver, the next entry is after the tractor or the vehicle number 43, it will say non-owned trailer, because that's how it works. We have to pull trailers. That would not be true. Rather, you'd see a bunch of trailers mentioned with VIN numbers. Is that what you're trying to tell us, Mr. Miller? No, there are some that are listed with VIN numbers because they're set to that company or the company where, for example, let's say ABC. I don't care about it. So some do have VIN numbers and some say? Some don't. They're identified as what the record reflects is that it's identified, and I'm going to tell you why, because we're going to get back to the definition of an insured here. The trailer is owned by somebody who's already an additional insured under the policy. That question was asked, you mean you can be driving down the road and pulling somebody and it's not an insured vehicle? Yes, if it's not identified in the policy. That gets back to the language, the exclusion. The counsel here points out he wants to rely on B, but this court, Section D is what an insured is, but this court is certainly well aware you cannot read an insurance policy in isolation. You can't do it. You have to read the section that he's citing is under the definition person is insured. Each of the following is an insured, and it gives a definition, A, B, C, D, E, F, G. What he wants to ignore is right below D it says none of the following is an insured, and he takes exception to the fact of my pointing out Section 2, a trailer while used with any motor vehicle owned or hired by such person. And his argument was to you, well, we didn't own the vehicle, therefore it clearly doesn't apply. It's obliguous. Well, what he ignores is that's not what it says. It says owned or hired. What has been disputed in this case is that Costco hired someone to pull its trailer. That's why it's not an insured under the policy. Now, if Interpol, who is an additional insured, was sitting there and had done that, they would be an insured under the policy. That's how it all ties up because that's what the policy says. That's where Vehicle 44 comes into play. It is an unowned vehicle of ours, but it's insured by or it's owned by somebody that's an additional insured under the policy. That's what the testimony shows. And as Justice Coleman points out, to the extent that there's any question about this, it's a question of fact. Counsel, but then the other question is you pointed out when you first stood up here and rebuttaled that your evidence is the affidavit we're looking for evidence, AFI is presenting evidence of Robert McKinnon. Is that correct? That's correct. It wasn't that stricken by the claim? And as I set forth in my brief, the basis for striking that I think were improper. He sets forth, for example, he sets forth he's the claims manager. He certainly has the knowledge to be able to testify concerning what's in the claims file. And he gave forth facts, not any legal opinion. There was no basis for striking it. So I think part of in looking at this is I think the court should consider it because I think the court should follow the argument that I put forth and overrule the court as far as striking it. There was no legal basis to strike it. I want to address another very important point that counsel makes which permeates his entire argument about the evidence. The burden, again, I cite this case very well established for insurance coverage. The burden is on him, not me, to establish coverage. I don't have to establish a lack of coverage. That's not my burden. It's his burden to establish coverage. And his argument that we didn't present any evidence of what vehicle 44 is is irrelevant because he didn't present any evidence. I don't have to prove what vehicle 44 is. I'm not required to. I'm only required to rebut what he proves. And that's very straight case law. But he ignores that. The other couple of issues that are raised here, the tender issue. The tender issue is important in this case because if the interquartile trust is not the case. Okay. The last thing was the fee petition. The reason why you don't have a fee petition, the hourly breakdown, is because it's not relevant for this court. ASI has not asked the court to look at it. The reason why is because we had no opportunity to contest it. There's nothing that we could do. We're not asking this court to overturn anything along those lines. And finally. We don't need any more on that issue. Okay. Finally, this is my final issue. The policy, the way that this application was submitted. Counsel went outside the brief and made an argument which is just not true. And that is ASI does not write the policies as he claims they do. Instead, independent brokers do. And that's what the evidence in the record shows. So the application that was submitted, as Justice Quinn points out, was not submitted by the insurer to ASI. It was submitted by the insurer to his broker, not ours, independent contractor, his broker, who then submitted the application to us and the policy was written. The only reason why that other policy is in ASI's file is because the broker provided it to us after the suit was filed. It was not part of the underlying file. We don't do that type of underwriting. So for that reason, I ask the court to reverse for all of the reasons previously stated. Thank you. Thank you. Thank you for your time.